# In the United States Court of Federal Claims

BID PROTEST
No. 16-1316C
Filed Under Seal: March 9, 2017
Reissued for Publication: April 11, 2017

| | |
|---|---|
| BY LIGHT PROFESSIONAL IT SERVICES, INC., ) ) ) Plaintiff, ) ) v. ) ) THE UNITED STATES, ) ) Defendant, ) ) v. ) ) TRIBALCO, LLC, ) ) Defendant-Intervenor. ) ) | Post-Award Bid Protest; Judgment upon the Administrative Record; RCFC 52.1; Permanent Injunction. |

*E. Sanderson Hoe*, Counsel of Record, Covington & Burling LLP, Washington DC, for plaintiff.

*David M. Kerr*, Trial Attorney, *Franklin E. White Jr.*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington DC, *Karl W. Kuhn*, Assistant Counsel, United States Army Engineering and Support Center, United States Army Corps of Engineers, Huntsville, AL, for defendant.

*Richard L. Moorhouse*, Attorney of Record, *Józef S. Przygrodzki*, Of Counsel, Greenberg Traurig, LLP, Mclean, VA, *Ryan C. Bradel*, Of Counsel, Greenberg Traurig, LLP, Washington DC, for defendant-intervenor.

**MEMORANDUM OPINION AND ORDER**

GRIGGSBY, Judge

## I.  INTRODUCTION

Plaintiff, By Light Professional Services, Inc. ("By Light"), brought this post-award bid protest matter challenging the United States Army Corps of Engineers' ("USACE") decision to

award a contract for radio, satellite and microwave systems hardware and service support to Tribalco, LLC ("Tribalco"). By Light has moved for judgment upon the administrative record, pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"). The government and Tribalco have also moved for judgment upon the administrative record, pursuant to RCFC 52.1. For the reasons discussed below, the Court **DENIES** By Light's motion for judgment upon the administrative record; **GRANTS** the government's motion for judgment upon the administrative record; **GRANTS** Tribalco's motion for judgment upon the administrative record; and **DENIES** By Light's motion for a temporary restraining order and preliminary injunctive relief.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.   Factual Background

In this post-award bid protest matter, By Light challenges the decision by the USACE to award a contract for radio, satellite and microwave systems hardware and service support under Solicitation No. W912DY-16-R-0015 (the "Solicitation") to the defendant-intervenor in this matter, Tribalco. Compl. at ¶¶ 1, 5, 33-36.

Specifically, By Light alleges that the USACE committed several errors in evaluating responsive proposals for the Solicitation and By Light challenges the agency's decision to award the contract to Tribalco upon four grounds. *Id.* at ¶¶ 45-73. First, By Light alleges that the USACE's determination that By Light's final proposal contained a deficiency−because the proposal did not include a task order number for work performed under a base IDIQ contract-was arbitrary and capricious. Pl. Mot. at 12-15. Second, By Light alleges that the USACE "improperly introduced an unannounced criterion that descriptions of past projects performed as task orders under IDIQ contracts must include a task order number," in violation of 48 C.F.R. § 15.303(b)(4). *Id.* at 16-17. Third, By Light alleges that the USACE erred in upgrading the rating regarding the relevancy of Tribalco's past performance under the Solicitation's Past Performance factor to a "relevant" rating, in violation of 48 C.F.R. § 15.305(a)(2)(iv). *Id.* at 18-21. Finally,

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the administrative record ("AR"); plaintiff's complaint ("Compl."); plaintiff's motion for judgment upon the administrative record ("Pl. Mot."); and plaintiff's reply brief and opposition to the government's motion for judgment upon the administrative record ("Pl. Opp."). Except where otherwise noted, all facts recited herein are undisputed.

By Light alleges that the USACE conducted an "irrational" evaluation of the final proposals submitted by By Light and Tribalco, thereby prejudicing By Light. *Id.* at 21-22.

By Light further alleges that it has been prejudiced by the aforementioned alleged errors, because it has been denied the opportunity to compete for award of the contract. Pl. Mot. at 2. And so, By Light requests that the Court set aside the USACE's award decision, direct the USACE to reevaluate By Light's proposal and grant By Light certain declaratory relief. Compl. at Prayer for Relief.

1. **The Solicitation**

On February 23, 2016, the USACE issued the Solicitation which requested proposals for a contract to provide radio, satellite and microwave systems hardware and service support throughout the United States and in select locations located outside the United States. AR at 116, 139, 141. The Solicitation calls for a hybrid, firm fixed-price IDIQ single award task order contract. *Id.* at 118.

There are several provisions in the Solicitation that are relevant to By Light's claims. First, the Solicitation calls for three evaluation factors: Technical Capability, Past Performance and Price. *Id.* at 204-08. [2] The Solicitation also provides that the Technical Capability factor will receive the greatest weight in evaluating responsive proposals, followed by, in descending order, the Past Performance factor and the Price factor. *Id.* at 210-11.

With respect to the Solicitation's Technical Capability factor, the Solicitation provides that proposals must receive a minimum rating of "acceptable" to be eligible for award. *Id.* The

---

[2] The following chart shows the Solicitation's three evaluation factors and their respective weight.

| Factor | Description | Relative importance |
|---|---|---|
| Factor 1<br>    Element 1<br>    Element 2<br><br>    Element 3 | TECHNICAL CAPABILITY<br>    Technical Approach<br>    Personnel Qualifications and<br>    Organizational Structure<br>    Experience | Most Important Factor |
| Factor 2 | PAST PERFORMANCE | Second Most Important Factor (Slightly Less than Factor 1) |
| Factor 3 | PRICE | Least Important Factor, Significantly less important than all non-price factors combined. |

AR at 210-11.

Solicitation also provides that a proposal will receive an "unacceptable" rating if the proposal fails to meet the requirements of the Solicitation or contains deficiencies. *Id.* at 212. The Solicitation's Technical Capability factor also includes three sub-factors: technical approach, personal qualifications and organizational structure, and experience. *Id.* at 206-07. Although these sub-factors are not individually weighted, the sub-factors contribute to the overall rating of the proposal. *Id.* at 206.

Especially relevant to this dispute, the Solicitation's experience sub-factor requires that offerors provide three past experiences that are relevant in "scope, magnitude and complexity." *Id.* at 207. In this regard, the Solicitation provides, in relevant part, that:

> Element 3, Tab C – Experience
>
> Offerors shall submit documentation of three past (completed within the last 36 months of the issuance of the RFP) or current projects (with at least one invoice paid) with similar scope, magnitude, and complexity to the work described in the RFP, specifically sections 4.1, 4.2, 4.3, and 4.4 of the PWS. Offerors shall not include introductory language in their proposal describing general experience. The Government in this section is interested only in three "projects," which are defined as discrete efforts relevant to this PWS. *An IDIQ contract or a BPA alone does not constitute a relevant "project" but a task order under an IDIQ contract or the placement of a call under a BPA may count as a "project."* If the offeror submits more than three (3) projects, the Government will only review and consider the first three listed in the proposal. Key subcontractors are defined as those who will be performing 10% or more of the overall effort. Offerors shall submit documentation with a minimum of three past or current projects with similar scope, magnitude, and complexity to the work described in the solicitation. Experience must include the following information:
>
> - Contract title
> - Current Project Manager, including name, company name, phone number, and email address
> - *Contract number*
> - Contract type
> - Contract value
> - Date of award
> - Period of Performance
> - Brief narrative (no longer than one page) describing the nature and complexity of the work

4

- Role of the offeror (prime or subcontractor) and percent of the total contract value
- Government Point of Contact (POC) including name, phone number, and email address

The POCs provided may be contacted by the Government as part of the evaluation of past performance.

*Id.* (emphasis supplied).

With respect to the Solicitation's Past Performance factor, the Solicitation also provides that "[t]he Government will conduct a performance risk assessment based on the quality and relevancy of the offeror's past performance, as well as that of its key subcontractors." *Id.* In addition, the Solicitation provides that, if past performance information cannot be located: "past performance will be rated neither favorably nor unfavorably. The performance confidence rating will be considered 'unknown.'" *Id.* Lastly, with respect to the Solicitation's Price factor, the Solicitation provides that "[t]he Government will evaluate all aspects of the price proposal for fairness and reasonableness for providing the best value to the Government." *Id.*

### 2. Evaluation Of Proposals Submitted By Tribalco And By Light

The USACE conducted a question and answer period for the Solicitation and provided the vendor questions and government responses to these questions to all offerors in an Amendment to the Solicitation dated March 16, 2016. *Id.* at 982, 1831. On March 24, 2016, five offerors submitted timely proposals for the Solicitation, including By Light and Tribalco. *Id.* at 1832.

In its initial proposal, By Light provided the contract number for the base IDIQ contract that By Light identified as one of the projects to satisfy the Solicitation's experience sub-factor. *Id.* at 1032. The USACE subsequently determined that By Light's failure to provide the task order number for this base IDIQ contract created a deficiency in By Light's initial proposal because, "[t]he type of contracts listed must not be IDIQs or BPAs (should be task orders or delivery orders of an IDIQ, BPA, or standalone contract) . . ." *Id.* at 1313.

The USACE also determined that the projects that By Light identified to satisfy the experience sub-factor were not of relevant "scope, magnitude, or complexity." *Id.* at 1312. And so, the USACE concluded that the projects identified by By Light to satisfy the experience sub-factor demonstrated a weakness and a deficiency in By Light's initial proposal. *Id.* at 1312-13.

5

During its evaluation of Tribalco's initial proposal, the USACE similarly determined that the projects that Tribalco identified to satisfy the experience sub-factor were not of relevant "scope, magnitude, or complexity." *Id.* at 1337. And so, the USACE evaluated these projects as a weakness in Tribalco's proposal. *Id.*

On May 18, 2016, the USACE issued a second amendment to the Solicitation, which extended the deadline for offerors to resubmit their proposals until May 25, 2016 ("Amendment 2"). *Id.* at 1355-57. On May 25, 2016, By Light, Tribalco and three other offerors timely submitted Final Proposal Revisions ("FPR"). *Id.* at 1832.

In its FPR, By Light cured the prior deficiency in its initial proposal with respect to the experience sub-factor, by providing the task order number for the base IDIQ contract that By Light previously identified as one of the projects to satisfy this sub-factor. *Id.* at 1535. By Light also provided two new projects to satisfy the experience sub-factor in its FPR. *Id.* at 1531-42. But, By Light did not provide the task order number for the base IDIQ contract that it put forward as one of these new projects. *Id.* at 1537. And so, the USACE determined that this failure created a deficiency in By Light's final proposal. *Id.* at 1656, 1836.

### 3. The SSEB's Evaluation Process

The USACE's Source Selection Evaluation Board ("SSEB") met to evaluate the final proposals on June 21–25, 2016. *Id.* at 1648, 1832. In the SSEB's report dated August 9, 2016, the SSEB evaluated each of the final proposals and decided to award the contract to Tribalco, because Tribalco's final proposal was "far superior" to the other proposals received by the government. *Id.* at 1648-64.

The SSEB's report shows that the SSEB first evaluated the final proposals under the Solicitation's Technical Capability factor. *Id.* at 1651-62. In this regard, the SSEB determined that By Light's proposal had [***] strengths−including one significant strength−and no weaknesses, one deficiency and no uncertainties. *Id.* at 1654-56. The SSEB also determined that the single deficiency in By Light's proposal arose from By Light's failure to provide the task order number for one of the base IDIQ contracts identified to satisfy the Solicitation's experience sub-factor. *Id.* at 1655-56. Specifically, the SSEB found that:

> The third experience was added but the contract number was incorrect. An IDIQ number was used instead. Per the [ARSS] solicitation, the contract number for previous performance is

6

>required. Failure to provide the contract number results in a deficiency . . .

*Id.* at 1656. And so, the SSEB rated By Light's proposal as "unacceptable" under the Solicitation's Technical Capability factor. *Id.* at 1651.

In evaluating Tribalco's final proposal under the Solicitation's Technical Capability factor, the SSEB determined that Tribalco corrected the weakness previously found in Tribalco's initial proposal. *Id.* at 1658-59. And so, the SSEB determined that Tribalco's final proposal had 15 strengths−including three significant strengths. *Id.* The SSEB also determined that Tribalco's overall proposal was technically superior to the other proposals that the government received for the five following reasons:

1. "TribalCo's technical support is [***] with [***] and [***]." *Id.* at 1659.

2. "TribalCo's proposed technical approach allows them to rapidly address technical issues and to conduct timely repairs, surges and emergencies, which [sic] in turn will increase efficiency and decrease spending resulting in time and cost saving to the government." *Id.* at 1660.

3. "TribalCo is the only vendor with [***]. Cost is obviously not the most significant factor. Operational efficiency is value to the government." *Id.* at 1661.

4. "TribalCo has significant direct USACE experience with radio services support as the current Radio Service contractor." *Id.*

5. "While all vendors may be able to provide support, TribalCo, [***] will be better positioned to provide immediate response for emergencies." *Id.*

And so, the SSEB rated Tribalco's final proposal as "outstanding" under the Solicitation's Technical Capability factor. *Id.* at 1974.

The SSEB also evaluated the final proposals under the Solicitation's Past Performance factor. *Id.* at 1651. During this evaluation, the SSEB rated the final proposals submitted by By Light and Tribalco as overall "satisfactory" under the Past Performance factor. *Id.*

With respect to By Light, the SSEB found that By Light had experience with satellite related technology, but did not have any experience with handheld radios. *Id.* at 1734. And so, the SSEB initially rated the relevance of By Light's past performance as "somewhat relevant" under the Past Performance factor. *Id.* The SSEB later determined that, "[t]he solicitation states that a rating of "Relevant" or better must be achieved in order for a vendor to be eligible for

7

award." *Id.* And so, in order not to penalize or exclude By Light from consideration for "merely lacking relevant performance," the SSEB changed By Light's rating with respect to relevance for the Past Performance factor from "somewhat relevant" to "relevant." *Id.*

With respect to Tribalco, the SSEB also determined that Tribalco did not have any experience that was directly parallel to the contract to be awarded. *Id.* at 1748-49. And so, the USACE initially rated Tribalco's final proposal as "somewhat relevant" under the Past Performance factor. *Id.* at 1734. But, in order to not penalize or exclude Tribalco from consideration for "merely lacking relevant performance," the SSEB also changed Tribalco's rating with respect to relevance under the Past Performance factor from "somewhat relevant" to "relevant." *Id.* at 1734.

Lastly, the SSEB evaluated the final proposals under the Solicitation's Price factor. *Id.* at 1651. In this regard, the SSEB compared the price offered by Tribalco and By Light. *Id.* Although By Light proposed a lower overall price than Tribalco, the SSEB determined, among other things, that "the government is concerned that By Light's pricing does not accurately reflect the cost associated with performing the work required in accordance with the RFP due to the [***] and the low number of [***] [full time employees]." *Id.* at 1664. And so, the SSEB rated By Light's and Tribalco's proposed price as "Fair and Reasonable." *Id.* at 1651.

After the SSEB completed its evaluation process for the Solicitation, the contracting officer issued a Source Selection Decision Document ("SSDD") which included a trade-off analysis comparing the final proposals submitted by Tribalco and By Light, and a trade-off analysis comparing the final proposals submitted by Tribalco and of another offeror, Commdex. *Id.* at 1831-50. In evaluating the Technical Capability factor, the contracting officer found that, "[t]he number of Full Time Employees (FTE's) [***] proposed by By Light is roughly half of those used to estimate the [Independent Government Estimate for the Solicitation ("IGE")]. . . . In comparison, Tribalco proposed 3.5 FTE's and their proposal meets the labor support needs of the PWS requirements and more closely aligns with the 4 FTE's used in the development of the IGE." *Id.* at 1837.

In evaluating the Solicitation's Past Performance factor, the contracting officer further found that the government's confidence in By Light's and Tribalco's ability to perform the work at an acceptable level was "satisfactory" for both offerors. *Id.* at 1840. But, in evaluating the Price factor, the contracting officer found that, "[a]lthough it appears that By Light is providing

8

the lowest priced proposal, they are not providing the Government the Best Value when it comes to Centralized Support." *Id.* at 1842. And so, after completing the trade-off analysis comparing the final proposals submitted by By Light and Tribalco, the contracting officer determined that, even if By Light received an "outstanding" rating under the Solicitation's Technical Capability factor, Tribalco's proposal offered the best value to the government. *Id.* at 1836-50.

The USACE awarded the contract to Tribalco on September 19, 2016. *Id.* at 1852.

### B. Procedural History

On October 11, 2016, By Light filed the complaint in this bid protest matter, as well as a motion for a temporary restraining order, motion for a preliminary injunction, memorandum in support of its motion for a preliminary injunction and motion for a protective order. *See generally* Compl; Pl. Mot. for TRO; Pl. Mot. for Prelim. Inj.; Pl. Mem.; Pl. Mot. for Prot. Order. With By Light's agreement, the Court held in abeyance By Light's motions for a temporary restraining order and for a preliminary injunction on October 12, 2016. Order, dated October 12, 2016 (Docket no. 11). Subsequently on October 13, 2016, Tribalco filed a motion to intervene in this matter, which the Court granted on October 13, 2016. *See generally* Int. Mot. to Intervene; Order dated October 13, 2016 (Docket entry no. 14).

On October 21, 2016, the government filed the administrative record. *See generally* AR. On November 14, 2016, By Light filed a motion for judgment upon the administrative record. *See generally* Pl. Mot. On December 9, 2016, the government and Tribalco filed their respective responses and oppositions to By Light's motion for judgment upon the administrative record and cross-motions for judgment upon the administrative record. *See generally* Def. Mot.; Int. Mot.

On December 19, 2016, By Light filed a response and opposition to the government's and Tribalco's cross-motions for judgment upon the administrative record and a reply in support of its motion for judgment upon the administrative record. *See generally* Pl. Opp. On December 30, 2016, the government and Tribalco filed their respective replies in support of their cross-motions for judgment upon the administrative record. *See generally* Def. Reply; Int. Reply.

These matters have been fully briefed, the Court addresses the pending motions.

III.  LEGAL STANDARDS

    A.  **Jurisdiction And Bid Protests**

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1) (2011). In bid protest cases, this Court reviews agency actions under the "arbitrary and capricious" standard. *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the Administrative Procedure Act). And so, under the Administrative Procedure Act standard, an award may be set aside if, "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). The United States Court of Appeals for the Federal Circuit has also recognized that:

> When a challenge is brought on the first ground, the test is 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a "heavy burden" of showing that the award decision had no rational basis. When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.'

*Id.* at 1351 (citations omitted).

In reviewing an agency's procurement decision, the Court should recognize that the agency's decision is entitled to a "presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971) (citations omitted), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). And so, the Court should not substitute its judgment for that of the agency. *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997). "The protestor must show, by a preponderance of the evidence, that the agency's actions were either without a reasonable basis or in violation of applicable procurement law" or procedure. *Info. Tech. & Applications Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003) ("*ITAC*"); *see also Bannum, Inc. v. United States*, 60 Fed. Cl. 718, 723 (2004); *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 648 (2003). This standard "is highly deferential"

and "requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000) (citing *Bowman Transp., Inc. v. Ark.–Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)).

In addition, as long as there is "a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion . . ." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (citations omitted). But, if "the agency 'entirely fail[s] to consider an important aspect of the problem [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency,'" then the resulting action lacks a rational basis and, therefore, is defined as arbitrary and capricious. *Ala. Aircraft Indus., Inc.–Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

**B.     Judgment Upon The Administrative Record And Injunctive Relief**

Generally, Rule 52.1 limits this Court's review of an agency's procurement decision to the administrative record. RCFC 52.1; *see Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) ("'[T]he focal point for judicial review should be the administrative record already in existence'".). And so, unlike a summary judgment motion brought pursuant to Rule 56, the existence of genuine issues of material fact does not preclude judgment upon the administrative record under Rule 52.1. *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242-43 (2011). Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006).

In addition, under its bid protest jurisdiction, the Court "may award 'any relief [it] considers proper, including declaratory and injunctive relief.'" 28 U.S.C. § 1491(b)(2); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). In deciding whether to issue a permanent injunction, the Court considers: (1) whether the plaintiff has succeeded upon the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief. *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004); s*ee also Amoco Prod.*

*Co. v. Vill. of Gambell, Alaska,* 480 U.S. 531, 546 n. 12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."); *Centech Grp., Inc.*, 554 F.3d at 1037. These four factors are to be considered collectively, rather than individually, such that "[n]o one factor, taken individually, is necessarily dispositive. . . . [T]he weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993). Conversely, "the absence of an adequate showing with regard to any one factor may be sufficient" to deny injunctive relief. *Id.*

A plaintiff who cannot demonstrate success upon the merits cannot prevail upon a motion for injunctive relief. *Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd*., 357 F.3d 1319, 1325 (Fed. Cir. 2004) (finding that a plaintiff who cannot demonstrate a reasonable likelihood of success upon the merits cannot prevail upon its motion for preliminary injunctive relief), *reh'g* and *reh'g en banc* denied. The Federal Circuit has also found success upon the merits to be "the most important factor for a court to consider when deciding whether to issue injunctive relief." *Dellew Corp. v. United States*, 108 Fed. Cl. 357, 369 (2012) (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 312 (Fed. Cir. 2007)). However, while success upon the merits is necessary, it is not sufficient alone for a plaintiff to establish that it is entitled to injunctive relief. *See Contracting, Consulting, Eng'g LLC v. United States*, 104 Fed. Cl. 334, 353 (2012) ("Although plaintiff's entitlement to injunctive relief depends on it succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well.") (citing *PGBA, LLC*, 389 F.3d at 1228-29).

### IV.   LEGAL ANALYSIS

In its motion for judgment upon the administrative record, By Light challenges the evaluation process for the Solicitation upon four grounds. First, By Light alleges that the USACE's determination that By Light's final proposal contained a deficiency−because the proposal did not include a task order number for work performed under a base IDIQ contract−was arbitrary and capricious. Pl. Mot. at 12-15. Second, By Light alleges that the USACE "improperly introduced an unannounced criterion that descriptions of past projects performed as task orders under IDIQ contracts must include a task order number," in violation of 48 C.F.R. § 15.303(b)(4). *Id.* at 16-17. Third, By Light alleges that the USACE erred in

upgrading the rating regarding the relevancy of Tribalco's past performance under the Solicitation's Past Performance factor to a "relevant" rating, in violation of 48 C.F.R. § 15.305(a)(2)(iv). *Id.* at 18-21. Finally, By Light alleges that the USACE conducted an "irrational" evaluation of the final proposals submitted by By Light and Tribalco, thereby prejudicing By Light. *Id.* at 21-22.

The government and Tribalco both counter that the administrative record in this matter shows that the USACE conducted a reasonable evaluation process, in accordance with the requirements of the Solicitation and applicable law. For the reasons discussed below, the Court agrees. And so, the Court **DENIES** By Light's motion for judgment upon the administrative record; **GRANTS** the government's cross-motion for judgment upon the administrative record; and **GRANTS** Tribalco's cross-motion for judgment upon the administrative record.

### A. By Light's Challenge To The Solicitation's Task Order Number Requirement Is Untimely

As an initial matter, to the extent that By Light alleges in this post-award bid protest action that the Solicitation contains a patent ambiguity with respect to whether a task order number for work performed for an IDIQ contract is required to satisfy the Solicitation's experience sub-factor, By Light's claim is untimely. This Court has long recognized that an offeror wishing to challenge the terms of a solicitation must do so before offers are due. *Blue & Gold Fleet*, 492 F.3d at 1313-15 (holding that a protester who knew the agency's interpretation of a solicitation but failed to challenge it before bids were due, waived its ability to object afterwards). It is also well established that when a solicitation contains a patent ambiguity, an offeror must bring the patent ambiguity to the attention of the contracting officer prior to the close of the procurement process, or otherwise waive the ability to pursue a claim in this Court. *Id.* And so, By Light may not challenge an alleged patent ambiguity in the Solicitation with respect to the task order number requirement here, if By Light failed to raise a concern about this requirement before the conclusion of the procurement process. *Id.*

In this case, the administrative record shows that By Light did not raise a concern about the Solicitation's task order number requirement prior to submitting its final proposal.[3] *See* AR

---

[3] The government attached the Declaration of Jennifer L. Kelley, the contracting officer for the Solicitation, as an attachment to its opposition to By Light's motion for judgment upon the administrative record and cross-motion. Def. Mot. at Attachment. But, the government has not moved to supplement

13

at 982-92. The administrative record also shows that, although By Light did not raise this issue, By Light had ample opportunity to challenge the Solicitation's task order number requirement prior to submitting its final proposal. In fact, the record evidence shows that the USACE conducted an extensive question and answer process before the submission of initial proposals. *Id.* at 901. Although more than 40 questions were put forward, By Light did not raise a question about the Solicitation's task order number requirement. *Id.* at 901, 982-92.[4]

The administrative record also shows that By Light had ample notice of the Solicitation's task order number requirement before final proposals were due. After finding that By Light's initial proposal failed to include the task order number for a project involving work performed under an IDIQ contract, the USACE issued an evaluation notice specifically informing By Light that "[t]he type of contracts listed must not be IDIQs or BPAs (should be task orders or delivery orders of an IDIQ, BPA, or a standalone contract) . . ." *Id.* at 1313. To the extent that By Light remained unclear about the requirement to provide a task order number for its IDIQ contracts, By Light had an obligation to raise such concerns before submitting its final offer. *See Blue & Gold Fleet*, 492 F.3d at 1313; *see Pyramid Real Estate Servs., LLC v. United States*, 95 Fed. Cl. 125, 137 n.16 (2010) (rejecting an offeror's protest because it failed to raise concerns about the solicitation during the proposal process despite the contracting agency's answers and amendments to related provisions). Because By Light failed to do so, the administrative record shows that By Light has waived any claim regarding the Solicitation's task order number requirement in this case. *See Blue & Gold Fleet,* 492 F.3d at 1313.

---

the administrative record with this declaration. Because the existing administrative record is sufficient to permit meaningful judicial review, the Court does not consider this declaration for the purpose of resolving the parties' cross-motions for judgment upon the administrative record.

[4] The administrative record suggests that the Solicitation's task order number requirement may have been unclear to several other offerors. Four of five offerors failed to include a task order number for an IDIQ contract in their final proposals. *Id*. at 1686-89, 1700.

**B. By Light's Claims Are Unsubstantiated By The Record Evidence**

    **1. The Record Evidence Also Shows That The USACE Reasonably Determined That By Light's Proposal Was Deficient**

Even if By Light could pursue its challenge to the Solicitation's task order number requirement in this litigation, By Light's challenge to this requirement is unsubstantiated by the administrative record. A plain reading of the Solicitation makes clear that the Solicitation requires that By Light provide a task order number for an IDIQ contract in order to satisfy the Solicitation's experience sub-factor. Because there is no dispute that By Light failed to do so here, the administrative record demonstrates that the USACE reasonably determined that By Light's final proposal contained a deficiency.

In this regard, the Solicitation provides that, "[a]n IDIQ contract . . . alone does not constitute a relevant 'project'" under the Solicitation's experience sub-factor. AR at 207. Rather, the Solicitation requires that "a task order under an IDIQ contract . . . may count as a 'project'". *Id.* And so, the Solicitation clearly provides that an IDIQ contract alone cannot be a project for the purpose of satisfying the experience sub-factor.

In addition, the Solicitation further requires, among other things, that:

> Offerors shall submit documentation with a minimum of three past or current projects with similar scope, magnitude, and complexity to the work described in the solicitation. *Experience must include the following information: . . . contract number . . .*

*Id.* (emphasis supplied). And so, the plain text of the Solicitation also makes clear that among the information that must be provided to satisfy the experience sub-factor is a contract number for a particular project. *Id.*

Because an IDIQ contract cannot be considered a "project" under the plain terms of the Solicitation, the USACE interpreted the Solicitation's requirement to provide a "contract number" for projects involving an IDIQ contract to require that the task order number for work performed under an IDIQ contract be provided. *Id.* at 207, 1313. As the government observes in its cross-motion, the USACE's reading of the Solicitation is reasonable because a base IDIQ contract could not be put forward as a "project" for the purpose of satisfying the Solicitation's experience sub-factor. Def. Mot. at 22-23. Given this, the USACE reasonably interpreted the Solicitation to require that By Light provide the task order number for any project involving

15

work performed under an IDIQ contract that had been provided to satisfy the Solicitation's experience sub-factor.

Because the Solicitation requires that By Light provide a task order number for its IDIQ contracts, the administrative record also demonstrates that the USACE reasonably concluded that By Light's final proposal was deficient. There is no dispute that By Light's final proposal did not provide the task order number for one of the IDIQ contracts that By Light identified to satisfy the Solicitation's experience sub-factor. *Id.* at 1483-85. Given this, the USACE appropriately concluded that this failure constituted a deficiency in By Light's final proposal.

By Light's contention that its final proposal was not deficient because By Light provided other information to satisfy the experience sub-factor—including the contract type, award date and period of performance—is also misguided. *See* Pl. Mot. at 13; *Id.* at 1537-39. While the Solicitation does require that By Light provide this information, doing so did not relieve By Light of its obligation under the Solicitation's experience sub-factor to also provide the task order number for the work performed under all of its IDIQ contracts. *See* AR at 207. By Light's argument that it needed only to provide the contract number for its base IDIQ contract is also contrary to the plain language of the Solicitation. Pl. Mot. at 12-15. And so, again, the record evidence demonstrates that the USACE reasonably determined that By Light's final proposal was deficient. The Court will not set aside the agency's reasonable procurement decision.

### 2. By Light Has Not Demonstrated That The Task Order Number Requirement Is An Unannounced Criterion

By Light similarly fails to show that the Solicitation's task order number requirement is an unannounced evaluation criterion. To prevail upon this claim, By Light must show that: (1) the USACE used a significantly different basis in evaluating the proposals than was disclosed and (2) By Light has been prejudiced because it had a substantial chance to receive the contract award but for that error. *NEQ, LLC v. United States*, 88 Fed. Cl. 38, 48 (2009) (citing *Banknote Corp.,* 56 Fed. Cl. at 387). By Light makes neither showing here.

Rather, the administrative record demonstrates that the USACE used the criterion set forth in the Solicitation to evaluate the experience sub-factor. As discussed above, the plain language of the Solicitation makes clear that an IDIQ contract number is insufficient to satisfy the experience sub-factor and that a task order number for the work performed under an IDIQ contract is required to comply with this sub-factor.

The administrative record also demonstrates that the USACE informed By Light of this requirement prior to the submission of By Light's final proposal. AR at 1313. Given this, the administrative record shows that the USACE evaluated By Light's initial and final proposals under the same criterion, by requiring that a task order number for any IDIQ contract must be provided to satisfy the experience sub-factor. *Id.* at 1313, 1479-85.[5]

### 3. The USACE Did Not Err In Evaluating The Solicitation's Past Performance Factor

The administrative record also shows that the USACE conducted a proper evaluation process with respect to its consideration of the Solicitation's Past Performance factor. In this regard, By Light alleges the USACE erred by upgrading Tribalco's rating with respect to relevance under the Past Performance factor from "somewhat relevant" to "relevant," in violation of 48 C.F.R. § 15.305. Pl. Mot. at 18-21; AR at 1749; 48 C.F.R. § 15.305. By Light further alleges that it has been prejudiced as a result of this error. AR at 21. For the reasons discussed below, the Court disagrees.

The record evidence demonstrates that, even if the USACE erred in its evaluation of the Past Performance factor as By Light suggests, By Light has not been prejudiced by such an error. In this regard, the administrative record shows that the USACE determined that both By Light and Tribalco "had relevant past performances" and that the USACE initially rated both offerors' past experience as "somewhat relevant." *Id.* at 1661; 1734; 1749. The record evidence further demonstrates that the SSEB later determined that, in order to not penalize or exclude either offeror from further consideration for award of the contract, the SSEB should upgrade both offerors' ratings with respect to relevance under the Past Performance factor to "relevant." *Id.* at 1734, 1749.

To the extent that Tribalco benefitted from the USACE's decision to upgrade its relevancy rating for past performance, the record evidence shows that By Light similarly benefitted from this decision. Given this, By Light has not shown how it has been prejudiced by

---

[5] By Light also fails to demonstrate that it has been prejudiced because of the USACE's evaluation criterion. The administrative record shows that By Light would not have been awarded the contract at issue in this case even if the USACE had not found By Light's proposal to be deficient due to the lack of a task order number. AR at 1836.

the USACE's decision and so, By Light cannot prevail on this claim.  Pl. Mot. at 18-21; *see generally* Pl. Opp**;** *Banknote Corp.*, 365 F.3d at 1351 (A disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.)

### 4. The USACE's Trade-Off Analysis Was Reasonable

Lastly, the record evidence does not support By Light's claim that the USACE conducted an "irrational" evaluation of the final proposals submitted by By Light and Tribalco.  Pl. Opp. at 9-13; *see also* Pl. Mot. at 21-22.  To the contrary, the administrative record shows that the USACE's contracting officer performed a detailed and balanced trade-off analysis that reasonably compared the final proposals submitted by Tribalco and By Light.  AR at 1832-50.

With respect to the trade-off analysis for the Solicitation's Technical Capability factor, the contracting officer's trade-off analysis found that Tribalco's final proposal offered more strengths, even if By Light received an outstanding rating under this factor.  *Id.*  For example, the contracting officer found that:

> [t]he number of Full Time Employees (FTE's) [\*\*\*] proposed by By Light is roughly half of those used to estimate the [Independent Government Estimate for the Solicitation ("IGE")]. . . .  In comparison, Tribalco proposed 3.5 FTE's and their proposal meets the labor support needs of the PWS requirements and more closely aligns with the 4 FTE's used in the development of the IGE.

*Id.* at 1837.

With respect to the Solicitation's Past Performance factor, the contracting officer further found that the government's confidence in By Light's and Tribalco's ability to perform the work at an acceptable level was "satisfactory" for both offerors.  *Id.* at 1840.  But, with respect to the Solicitation's Price factor, the contracting officer found that, "although it appears that By Light is providing the lowest priced proposal, they are not providing the Government the Best Value when it comes to Centralized Support."  *Id.* at 1842.  And so, the contracting officer ultimately concluded that Tribalco's proposal offered the best value to the government.  *Id.* at 1836-50.

By Light's contention that the USACE's trade-off analysis is flawed because that analysis reflects a pre-determined outcome is also belied by the record evidence.  Pl. Opp. at 9-13.  As demonstrated above, the record evidence shows that the USACE's contracting officer carefully considered and weighed several evaluation factors and sub-factors in comparing By Light's final proposal and Tribalco's final proposal.

By Light's argument that the Court should set aside the USACE's trade-off analysis−because the USACE allegedly did not reveal to By Light that a trade-off analysis had been performed−is equally misguided. Even if true, By Light does not explain how the USACE's decision not to reveal this trade-off analysis violates terms of the Solicitation, or has prejudiced By Light. Pl. Mot. at 22.

Indeed, By Light points to no evidence in the administrative record to show that the USACE's trade-off analysis lacked a rational basis, or that this analysis has not been performed in good faith. *See generally* Pl. Mot. and Pl. Opp. Given this, the Court will not substitute its judgment for that of the USACE. *Cincom Sys., Inc.*, 37 Fed. Cl. at 672.

### C. By Light Has Not Shown That It Is Entitled To Injunctive Relief

Because By Light has not met its burden to demonstrate that the USACE's evaluation process for the Solicitation was improper, By Light also fails to demonstrate that it is entitled to the injunctive relief that it seeks in this matter. When determining whether to grant injunctive relief, the Court considers: (1) whether the plaintiff has succeeded upon the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the Court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief. *PGBA, LLC*, 389 F.3d at 1228-29; *see also Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983). In addition, where as here, the evidence demonstrates that a plaintiff will not succeed upon the merits of its claims, a plaintiff cannot prevail upon a claim for injunctive relief. *Cf. Altana Pharma AG v. Teva Pharm. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009) (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)) ("Although the factors are not applied mechanically, a movant must establish the existence of both of the first two factors to be entitled to a preliminary injunction" or a temporary restraining order); *Nat'l Steel Car, Ltd.*, 357 F.3d at 1325 (finding that a plaintiff who cannot demonstrate a reasonable likelihood of success upon the merits cannot prevail upon its motion for preliminary injunctive relief), *reh'g* and *reh'g en banc* denied.

In this case, By Light has simply not demonstrated that any of its challenges to the USACE's evaluation process for the Solicitation are supported by the administrative record. Given this, By Light also has not shown that it is entitled to injunctive relief.

**V.      CONCLUSION**

In sum, the administrative record in this case demonstrates that the USACE conducted a reasonable evaluation process for the Solicitation at issue in this litigation and that the agency's evaluation process complied with the terms of the Solicitation and applicable law.  Given this, By Light has not shown that the USACE's actions here were arbitrary, capricious, an abuse of discretion, or not in accordance with the Solicitation or applicable law.

And so, for the foregoing reasons, the Court:

(1) **GRANTS** the government's motion for judgment upon the administrative record;

(2) **GRANTS** Tribalco's motion for judgment upon the administrative record;

(3) **DENIES** By Light's motion for judgment upon the administrative record; and

(4) **DENIES** By Light's motion for a temporary restraining order and preliminary injunctive relief.

Judgment shall be entered accordingly.

Each party shall bear their own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the protective order entered in this matter on October 13, 2016.  This Memorandum Opinion and Order shall be filed under seal.  The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication.

The Court hereby **ORDERS** that the parties **FILE**, by April 10, 2017, a joint status report identifying the information, if any, that they contend should be redacted, together with an explanation of the basis for each proposed redaction.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge
